UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| BRANDON PAGE, ET AL | CIVIL ACTION |
| Plaintiffs | |
| VERSUS | NO. 16-3621 |
| CRYSTAL ALLEY DUNN, ET AL | SECTION: "E"(2) |
| Defendants | |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendants Crystal Alley Dunn and Bradley T. Dunn.[1] The motion is opposed.[2] For the reasons that follow, the motion is **DENIED**.

## BACKGROUND

On May 26, 2016, Plaintiffs Brandon and Stephanie Page bought a home in Metairie, Louisiana "AS IS" from Defendants Crystal and Bradley Dunn.[3] After moving into their new home, Plaintiffs "discovered extensive, undisclosed, hidden, and intentionally concealed, redhibitory defects within the property."[4]

Plaintiffs allege that Mr. Dunn, "a contractor by trade," made "substantial improvements and repairs" on the property before selling it to Plaintiffs,[5] but that Mr. Dunn failed to report any of those repairs or the defects the repairs were meant to remedy in the home's Louisiana Residential Property Disclosures form.[6] "On or about May 3, 2016," before the sale of the home closed, "Michael J. Turner Home Inspections reviewed

---

[1] R. Doc. 25.
[2] R. Doc. 29.
[3] R. Doc. 22 at ¶ VI, VIII; R. Doc. 29-2 at ¶ 13.
[4] *Id.* at ¶ XII.
[5] *Id.* at ¶ IV.
[6] *Id.* at ¶ XIII. Louisiana Revised Statutes 9:3198(A)(1) states "The seller of residential real property shall complete a property disclosure document in a form prescribed by the Louisiana Real Estate Commission or a form that contains at least the minimum language prescribed by the commission."

1

the Louisiana Residential Property Disclosure[], noted that no prior repairs or water intrusion had been disclosed[,] and conducted an [sic] visual inspection [of the property] pursuant to La. R.S. 37:1471."[7] Because Mr. Turner conducted only a visual inspection, "[h]idden or concealed defects were not included in the report."[8] Two months after the sale became final, having concerns with the home, Plaintiffs contacted Mr. Turner to conduct a follow up inspection, which took place on July 12, 2016.[9] During this more in-depth inspection, Mr. Turner concluded extensive water damage existed in the home.[10]

> According to Plaintiffs:
>
> Bradley T. Dunn . . . intentionally and fraudulently concealed, through negative response on the Louisiana Residential Property Disclosures, that the property suffers from drainage problems. Specifically, the back carport holds standing water. Portions of the slab have been sloped in an effort to correct this problem but is ineffective. There are chronic moisture problems on the interior walls of the shed and there is always standing water in the shed requiring much of the framing to be re-built once the foundation is leveled and drainage problems eliminated.[11]
>
> Bradley T. Dunn further intentionally and fraudulently concealed defects in the property by marking "N" on the Louisiana Residential Property Disclosures regarding the identity of any defects in the ceiling, interior walls, floor, decks, and exterior walls.[12]

Plaintiffs also allege the house contained toxic levels of mold and trapped moisture at the time of sale, which has resulted in "[h]igh levels of actively growing Stachybotrys."[13] Finally, Plaintiffs allege Defendants "misrepresented . . . that the property had never had termites or other wood-destroying insects" despite Mr. Dunns' having contacted

---

[7] R. Doc. 29-2 at ¶ VII.
[8] *Id.* at ¶ VII.
[9] R. Doc. 29-6 at 15.
[10] *Id.*
[11] R. Doc. 29-2 at ¶ XIII.
[12] *Id.* at ¶ XIV.
[13] *Id.* at ¶ XV (P).

Envirotec Pest Control Services, LLC in 2016 "regarding termites within the [outside] shed."[14]

Based on these alleged redhibitory defects, Plaintiffs filed suit against Defendants on November 18, 2016 in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, seeking to rescind the sale.[15] On December 13, 2016, Defendants removed the case pursuant to this Court's diversity subject matter jurisdiction.[16] Defendants now move for summary judgment.[17]

## **LEGAL STANDARD**

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] "An issue is material if its resolution could affect the outcome of the action."[19] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[20] All reasonable inferences are drawn in favor of the non-moving party.[21] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[22]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of

---

[14] *Id.* at ¶ XV (V).
[15] R. Doc. 1-2.
[16] R. Doc. 1.
[17] R. Doc. 25.
[18] FED. R. CIV. P. 56; *see also Celotex*, 477 U.S. at 322–23.
[19] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[20] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[21] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[22] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

[the record] which it believes demonstrate the absence of a genuine issue of material fact."[23] If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, to satisfy Federal Rule of Civil Procedure 56's burden, the moving party must do one of two things: it "may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[24] When the moving party chooses the latter option it:

> must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record.[25]

If the moving party fails to carry this burden, the motion must be denied.

If the moving party successfully carries its burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[26] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[27] "[U]nsubstantiated assertions are not competent summary judgment evidence."[28] Rather, "the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or

---

[23] *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 323).
[24] *Celotex*, 477 U.S. at 331.
[25] *Id.* (internal citation omitted).
[26] *Id.* at 322–25.
[27] *Id.* at 332–33.
[28] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324).

her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[29]

## **ANALYSIS**

Generally, the seller of a home impliedly warrants to the buyer that the property is free from redhibitory vices or defects.[30] Louisiana Civil Code article 2520 defines a redhibitory defect as one that:

> renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.[31]

A redhibitory defect must be latent and have existed at time of sale, as the implied warranty against redhibitory defects covers only hidden defects, not defects known to the buyer at the time of sale.[32] Even when a home is sold "as is," "it is well-settled under Louisiana law that a seller may not fail to disclose a defect or actively conceal it and then employ a waiver to contract out of its obligation to disclose that defect."[33]

In their motion for summary judgment, Defendants argue that summary judgment is warranted in this case because Plaintiff's home inspector, Mr. Turner, did not discover

---

[29] *Id.* (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).
[30] La. C.C. art. 2520.
[31] *Id.*
[32] *Id.*
[33] *Jones v. Wells Fargo Bank, N.A.*, 626 F. App'x 500, 506 (5th Cir. 2015); *see also Shelton v. Standard/700 Assocs.*, 798 So. 2d 60, 64 (La. 2001) (explaining that "fraud in the inducement of a contract cannot be waived," and that "although the warranty against redhibitory defects may be excluded or limited, a seller cannot contract against his own fraud and relieve himself of liability to fraudulently induced buyers"); *Schmuck v. Menees*, 131 So. 3d 277, 281 (La. App. 5 Cir. 2013) ("[A] seller with knowledge of a redhibitory defect, who, rather than informing the buyer of the defect opts to obtain a waiver of the warranty implied by law, commits fraud, which vitiates the waiver because it is not made in good faith." (citation and internal quotation marks omitted)).

"any significant problems with the home in question"[34] and testified that during his May 3, 2016 inspection that "he did not detect the presence of mold in the home, nor did he suspect the presence of mold."[35] Defendants also submit they had no knowledge of any defects in the home that were not either repaired or disclosed to Plaintiffs prior to sale.[36] Defendants argue "[t]he fact that [P]laintiffs may have experienced such problems after the sale, and after a prolonged period of heavy rain . . . is not sufficient to establish that the complained of defects existed at the time of sale.[37]

Contrary to Defendants' assertion, genuine issues of material fact exist in this case as to whether the defects existed at the time of sale and whether Defendants had knowledge of those defects. For example, Defendants contend "[t]here is no evidence that the Dunns experienced any moisture intrusion problems or mold related issues in the residence during the entire time they lived in the home"[38] and that "Michael Turner, [P]laintiffs' home inspection expert, does not have any information or reason to believe that the Dunns experienced condensation or moisture-related problems in the home at any time prior to the time of his inspection of the home on May 3, 2016."[39] In his supplemental report, however, Mr. Turner noted that during his follow-up inspection on July 12, 2016:

> It was evident that water had indeed entered the structure as revealed by some drywall that had been removed with a distinct musky odor behind the wall and stains being present on the ceiling. The use of a moisture meter also determined that the wall under the window had a 100% moisture content.[40]

---

[34] R. Doc. 25-1 at 16.
[35] *Id.*
[36] R. Doc. 25-19 at ¶ 14, 18.
[37] *Id.* at 17–18.
[38] R. Doc. 25-19 at ¶ 14.
[39] *Id.* at ¶ 18.
[40] R. Doc. 29-6 at 16.

Mr. Turner further explained during his deposition that "installation of spray foam insulation," which Plaintiffs contend was done improperly prior to sale,[41] "could have an effect on water or condensation being captured in the walls."[42] In addition to Mr. Turner's testimony, Plaintiffs submit a report from Environmental Investigators ("Ei6"), which explains:

> CA Labs found high levels of Stachybotrys on the sheetrock; high levels, with hyphae, which indicates that the mold is actively growing. Ei6 opines that the water intrusion in the Page residence on Pike Drive has been occurring for an extended period of time, definitely considerably longer than the approximately 1 month that the Page's have lived in the house since they purchased it. It is unlikely that the seller/previous owner was unaware of the water intrusion.[43]

Thus, genuine issues of material fact regarding whether the home contained water damage at the time of sale and whether the Dunns had knowledge of the water damage remains, and summary judgment is inappropriate at this stage of the proceedings.

Accordingly;

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' motion for summary judgment be and hereby is **DENIED**.[44]

**New Orleans, Louisiana, this 21st day of November, 2017.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[41] R. Doc. 22 at XV(U).
[42] R. Doc. 29-6 at 12.
[43] R. Doc. 29-3 at 2.
[44] R. Doc. 25.